# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCHES OF:<br><br>One Red iPhone, Exhibit N-2, seized from a Guillermo Iglesias on January 4, 2022, currently in the custody of the Drug Enforcement Administration (DEA) at the Pittsburgh DEA District Office | Magistrate No: 22-41 |
| IN THE MATTER OF THE SEARCHES OF:<br><br>One Rose Gold iPhone, Exhibit N-3, seized from Angel Erick Perez Ramos on January 4, 2022, currently in the custody of the Drug Enforcement Administration (DEA) at the Pittsburgh DEA District Office | Magistrate No: 22-42 |
| IN THE MATTER OF THE SEARCHES OF:<br><br>One Silver iPhone, Exhibit N-4, seized from Angel Erick Perez Ramos on January 4, 2022, currently in the custody of the Drug Enforcement Administration (DEA) at the Pittsburgh DEA District Office | Magistrate No: 22-43 |
| IN THE MATTER OF THE SEARCHES OF:<br><br>One SIM Card Bearing "SM128PSIMT5T0D 8901 260 025 195 893 287", Exhibit N-5, seized from Angel Erick Perez Ramos on January 4, 2022, currently in the custody of the Drug Enforcement Administration (DEA) at the Pittsburgh DEA District Office | Magistrate No: 22-44 |

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS FOR CELLULAR PHONE

I, Karl Ash, being duly sworn depose and state:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant authorizing the examination of property; three electronic devices and one SIM Card (the "Devices") **were seized on January 4, 2022**. The devices are currently in the possession of the Drug Enforcement Administration.

2. As set forth below, I have probable cause to believe that the recovered device contains evidence of crimes in violation of 21 U.S.C. §§ 841(a)(1) (unlawful distribution of controlled substances), and 846 (conspiracy to distribute a controlled substance).

3. I am an "Investigative or Law Enforcement Officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

4. I am a Special Agent with the Drug Enforcement Administration (DEA), and have been so employed since December 2009. I am currently assigned to the DEA's Pittsburgh District Office ("PDO"), within the Philadelphia Field Division. As a DEA Special Agent, I have received extensive training pertaining to narcotic investigations and the investigations into the unlawful distribution of illegal drugs, in violation of Title 21 of the United States Code. I have conducted or participated in, among other things, surveillance, undercover transactions, and execution of search and arrest warrants, debriefings of informants and confidential sources, and reviews of taped conversations relating to narcotics trafficking.

I have also assisted in the execution of numerous drug-related searches and arrest warrants. I know that distributing and possessing with intent to distribute controlled substances is a felony offense under Title 21 of the United States Code, as is conspiring to do so.

5. Based on my training and experience, I am familiar with the methods of operation employed by drug trafficking organizations operating at the local, state, national, and international levels, including those involving the distribution, storage, and transportation of narcotics and the collection of money that constitutes the proceeds of narcotics trafficking activities. I am aware that drug traffickers commonly use cellular telephones in furtherance of their drug trafficking activities and will carry those devices with them where ever they go. I am also aware that drug traffickers often speak in vague, guarded, coded language or employ text messaging when discussing their illegal business in an effort to further prevent detection. I am familiar with the common appearance, packaging, texture, and smell of narcotics including cocaine, crack cocaine, oxycodone, heroin, and other illegal drugs.

6. Further, based on my training and experience, I am aware that it is common practice for drug traffickers who desire to insulate themselves from detection by law enforcement, to routinely utilize multiple telephones, counter surveillance, false or fictitious identities, and coded communications in order to communicate with their customers, suppliers, couriers, and other conspirators. Moreover, it is not unusual for them to initiate or subscribe such phone services in fictitious names or under the name of an associate or family member in an effort to thwart detection by law enforcement. It is now a common practice for drug traffickers to utilize all communication features of their telephones, most notably the voice

call and text message features, nearly simultaneously, to communicate with their conspirators and customers. For example, it is quite common for a particular transaction to be set up and completed using both voice calls and text messages. In fact, it is now quite unusual for a drug trafficker to utilize solely one feature of a telephone, such as the voice call feature, to further his criminal activities while not also using another feature, such as the text message feature, to further his criminal activities.

7. Further, your affiant is aware that drug traffickers sometimes use their cellular telephones and tablets to take and retain photographs and videos of their drugs, firearms, and narcotics sales proceeds. Such traffickers, like law-abiding citizens, sometimes take photographs and videos using their cellular telephones of themselves with their friends, relatives, and associates and keep the photographs on their cellular telephones. Such photographs and videos, when taken or retained by drug traffickers, can be evidence, and can lead to additional evidence of illegal trafficking activity by identifying the traffickers, contraband, and people who are actively assisting and/or supporting the trafficking activity as well as the locations where they live or where they store their drugs, proceeds, or paraphernalia.

8. Your affiant is aware that evidence of drug and firearm crimes can often be found in electronic media, including cellular telephones, laptop computers, cameras, and tablet devices. Such evidence can be found throughout those items, such as in text messages, contact lists indicating the names and numbers of associates, call/text logs indicating calls/texts made to and received from associates, online search history files, word processing documents, photographs and video files. It should be noted that, with the advance of technology, the distinction between computers and cellular telephones is

quickly becoming less clear. Actions such as internet searching or emailing, in addition to calling, text messaging and photographing, can now be performed from many cell phones. In addition, as noted above, those involved in drug and firearm trafficking crimes commonly communicate using multiple cellular telephones. Contemporaneous possession of multiple cellular telephones is, therefore, evidence of such trafficking. Moreover, the specific numbers of, and the specific numbers dialed by, particular cellular telephones can be evidence of drug trafficking, particularly in light of the fact that it is a practical necessity that drug traffickers communicate with each other, as well as with their customers and suppliers, by telephone. Such numbers can confirm identities of particular associates and the occurrence of certain events.

9. Due to narcotics traffickers' heavy reliance on cellular telephones to conduct their business, evidence of drug crimes can often be found on cellular telephones. For example, when a lower-level narcotics dealer receives an order (either in person or by telephone) for heroin or cocaine, that dealer may place a call or send a text message to a higher-level narcotics dealer indicating that he needs more narcotics to provide to the customer. Accordingly, evidence of such a narcotics conspiracy can be found in various locations in a cellular telephone, such as in text messages, contact lists indicating the names and numbers of associates, and call logs indicating calls made to and received from associates. This evidence of a narcotics conspiracy is critical to law enforcement's ability to locate and arrest all individuals involved in a particular narcotics sale.

10. Last, as with most electronic/digital technology items, communications made from an electronic device, such as a cellular telephone, are often saved or stored on the device.

       Storing this information can be intentional, for example, by saving a text message or a contact or an e-mail. Digital information can also be retained unintentionally. Traces of the path of an electronic communication or of an internet search may be automatically stored in many places on a cellular telephone. A forensic examiner often can recover evidence that shows when and in what manner a user of an electronic device, such as a computer or a cell phone, used such a device. Electronic files or remnants of such files can be recovered months or even years after they have been downloaded, stored, deleted, or viewed.

11. I am submitting this affidavit in support of an application for a warrant to search three cellular telephones and one SIM Card, the devices were seized on January 4, 2022. I have obtained the information contained in this affidavit from my own participation in this investigation as well as from my conversations and interactions with other law enforcement agents and officers.

12. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and it does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

13. The devices to be searched are:
    a. One red iPhone Cellular Telephone, DEA Exhibit N-2 ("Target Device 1")
    b. One Rose Gold iPhone Cellular Telephone, DEA Exhibit N-3 ("Target Device 2")
    c. One Silver iPhone Cellular Telephone, DEA Exhibit N-4 ("Target Device 3")

    d.  One Sim Card bearing numbers "SM128PSIMT5TT0D 8901 260 025 195 893 287", DEA Exhibit N-5 ("Target Device 4")

The devices are currently located at the Pittsburgh Drug Enforcement Administration District Office. As described below, there is probable cause to conclude that the device contains evidence of the commission of the federal offenses as listed in Attachment B.

14. The applied-for warrant would authorize the forensic and/or manual examination of the device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

15. I am currently participating in the investigation of Guillermo Iglesias and Angel Erick Perez Ramos. The statements contained in this Affidavit are based on my experience and background as a Special Agent with the DEA and the investigation of Iglesias and Perez Ramos. For the reasons set forth below, there is probable cause to believe that on or about January 4, 2022, Iglesias and Perez Ramos both possessed with intent to distribute a substance with a detectable amount of cocaine HCL, in violation of Title 21, United States Code, Sections 841(a)(1).

16. On January 4, 2022, Pennsylvania State Police Trooper Bruce Waters conducted a traffic stop on a Honda Accord bearing Pennsylvania license plate LWC7046 for a summary traffic violation. During the traffic stop, Trooper Waters observed indicators of criminal activity, deceptive behaviors and tradecraft associated with narcotics trafficking. The driver of the vehicle was identified as Guillermo Iglesias and the passenger was identified as Angel Erick Perez Ramos. The vehicle is registered to Guillermo Iglesias at 2952

Hellerman Street, Philadelphia, PA. Trooper Waters asked for consent to search the vehicle, and Iglesias denied consent. Due to the immediate unavailability of a police K9, the vehicle was towed to the Pennsylvania State Police Barracks in Greensburg, PA to preserve any potential evidence in anticipation of obtaining a search warrant. Once at the Pennsylvania State Police Barracks, a police K9 was deployed and altered to the trunk area of the vehicle. On the same day, a search warrant for the vehicle was authorized by the Honorable Christopher A. Feliciani, Court of Common Pleas, Westmoreland County.

17. On January 4, 2022, a search of the vehicle was conducted. During the search approximately one kilogram of suspected cocaine was found in two vacuum sealed bags in the spare tire compartment of the trunk. The vacuum sealed bags were contained inside a plastic shopping back next to the spare tire, underneath the carpeting of the trunk. Also, found in the vehicle were three cellular telephones. The suspected cocaine and cellular telephones were seized as evidence.

18. That same day, DEA took custody of the evidence. A field test was conducted on the suspected cocaine and the result was presumptive positive for the presence of cocaine HCL. The cellular telephones were processed by DEA as Exhibits N-2, N-3 and N-4. When the case was removed from the silver iPhone (Exhibit N-4) to check the physical condition of the device, a loose SIM card was discovered along with a scrap of paper that contained a telephone number. The loose SIM card was processed by DEA as Exhibit N-5.

19. Guillermo Iglesias is currently on federal supervised release. He was convicted of Possession with Intent to Distribute Five Kilograms or more of Cocaine, a Schedule II controlled substance on December 13, 2016, under Federal Docket number 15:CR:83, in

the Eastern District of Pennsylvania. Iglesias was sentenced to 60 months imprisonment with 4 years of supervised release.

20. I know, based on my training and experience, that narcotic traffickers often utilize multiple telephones and telephone numbers as a way to compartmentalize their narcotic trafficking activities and attempt to evade law enforcement. Narcotic traffickers will often utilize multiple different cellular telephones, utilize multiple SIM cards in one cellular telephone, or a combination of multiple cellular telephones and multiple SIM cards to accomplish this.

21. Based on the facts and circumstances explained herein, and my training and experience, it is my belief that the Devices will yield evidence of narcotic trafficking activities.

## CONCLUSION

22. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the device described above to seek the items described in Attachment A.

Respectfully submitted,

/s/ Karl Ash

**Karl Ash**
Special Agent - DEA
Pittsburgh District Office

Sworn and subscribed to me
by telephone pursuant to Federal R.
Crim. P. 4.1(b)(2)(A), this 10th day of January 2022

HONORABLE MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

*Target Device #1*

The property to be searched is: One red iPhone Cellular Telephone, Exhibit N-2, seized from Guillermo Iglesias on January 4, 2022, currently in the custody of the Drug Enforcement Administration (DEA) at the Pittsburgh DEA District Office

*Target Device #2*

The property to be searched is: One rose gold iPhone Cellular Telephone, Exhibit N-3, seized from Angel Erick Perez Ramos on January 4, 2022, currently in the custody of the Drug Enforcement Administration (DEA) at the Pittsburgh DEA District Office

*Target Device #3*

The property to be searched is: One silver iPhone Cellular Telephone, Exhibit N-4, seized from Angel Erick Perez Ramos on January 4, 2022, currently in the custody of the Drug Enforcement Administration (DEA) at the Pittsburgh DEA District Office

*Target Device #4*

The property to be searched is: One SIM card bearing numbers "SM128PSIMT5T0D 8901 260 025 195 893 287", Exhibit N-5, seized from Angel Erick Perez Ramos on January 4, 2022, currently in the custody of the Drug Enforcement Administration (DEA) at the Pittsburgh DEA District Office

## ATTACHMENT B

1. All records, information, and items evidencing who used the device and/or when and/or from where, or a violation Title 21, United States Code, Sections 841(a)(i) and 846, including:

   a. incoming and outgoing call and text message logs
   b. contact lists
   c. photo and video galleries
   d. sent and received text messages
   e. online searches and sites viewed via the internet
   f. online or electronic communications sent and received, including email, chat, instant messages and social media accounts
   g. sent and received audio files
   h. navigation, mapping, and GPS files
   i. telephone settings, including speed dial numbers and the telephone number for the subject telephone and related identifying information such as the ESN for the telephone
   j. call forwarding information
   k. messages drafted but not sent
   l. voice messages

2. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form. However, no real-time communications will be intercepted and searched during service.